IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------    :
HUGO SANCHEZ-RAMOS                                  :
                              Plaintiff             :  CASE NO. 4:05 CV 780
                                                    :
              -vs-                                  :
                                                    :  MEMORANDUM OF OPINION
                                                    :  AND ORDER
                                                    :
T.R. SNIEZEK, et al.                                :
                              Defendants            :
------------------------------------------------    :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 23 March 2005, *pro se* plaintiff Hugo Sanchez-Ramos filed the above-captioned *Bivens*[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Warden T.R. Sniezek, Captain W. Odom, Lieutenant Butts, Special Housing Unit ("SHU") Officer Dulak, SHU Officers "unknown," SHU Recreation Officer Woodruff, SHU Property Officer "unknown," Clinical Director "unknown", Medical Physician Assistants, "unknown," Physician's Assistants Bullock, Tomko, Flatt, and Zeller, "HSA-MO Azam," Associate Warden Robinson, Associate Warden Dashisen, "All SIS Lt's," and "All Unit Team Members in 'C' Unit." (Compl. at 1-2 and 17-18).[2] Mr. Sanchez-

---

[1] A *Bivens* action is a "judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors." Yeager v. General Motors Corp., 265 F.3d 389, 398 (6th Cir. 2001) (citing Bivens v. Six Unknown Agents, 403 U.S. 388, 395-97 (1971)).

[2] Mr. Sanchez-Ramos does not specifically identify Officer Dulak and Officer Woodruff as defendants in the case caption. He includes allegations pertaining to them in the complaint and later identifies them in a section of the pleading under the heading,"Staff Members At FCI-Elkton Responsible For The Assault And Conspiratorial Cover-Up." That section also identifies Physician's Assistants Bullock, Tomko, Flatt, and

(continued...)

Ramos alleges he was assaulted by a corrections officer and was denied proper medical care. He seeks $900,000.00 in damages, termination of the defendants' employment, and criminal prosecution of the officer who allegedly committed the assault.

## I. **BACKGROUND**

Mr. Sanchez-Ramos alleges that he was assaulted by FCI-Elkton Corrections Officer Dulak on 18 August 2004. Sancez-Ramos states that he took a book from a book cart while he and eleven other inmates were waiting for staff to open the "C" range door after returning to the SHU from recreation. He contends that, when Officer Dulak noticed the book, he "snatched the book from [Sanchez-Ramos's] cuffed hands," grabbed him by the jumpsuit collar, and pulled Sanchez-Ramos closer. (Compl. at 4). When the doors to the "D" range were opened, Officer Dulak allegedly forced Sanchez-Ramos inside the cell block. Sanchez-Ramos claims Officer Dulak once again grabbed him by the collar and slammed him into the wall. He states Officer Dulak then struck him in the neck with his right forearm and placed him in a choke hold until he lost consciousness. Sometime thereafter, Sanchez-Ramos became aware that he was being dragged into the "C" range of the SHU by Officers Dulak and Woodruff. He was placed in a holding cell where he was left "in shock, shaking, and in serious pain." (Compl. at 6).

Approximately 30 minutes after the incident, Sanchez-Ramos was taken to Lieutenant Butts's office. He indicates that Lieutenant Butts tried to question him about the

---

(...continued)
Zeller, "HSA-MO Azam," Associate Wardens Robinson and Dashisen, "All SIS LT.'s," and "All Unit Team members in 'C' Unit." (Compl. at 17-18). The court liberally construes the pleading to include them as defendants in this action.

2

incident but states that he was still too disconcerted by the incident to speak. He claims that Butts released his handcuffs, inspected his injuries, and took pictures. Lieutenant Butts then telephoned FCI-Elkton medical staff.

Physician Assistant Mr. Hall "briefly examined" Sanchez-Ramos's injuries. (Compl. at 9). After X-rays were taken, Sanchez-Ramos was returned to the SHU without a prescription and without any pain medication. Although Sanchez-Ramos filled out "medical sick-call slips" every day requesting pain medication, no pain medication was prescribed until 30 August 2004. (Compl. at 10). Mr. Sanchez-Ramos claims that the Clinical Director, the Physician Assistants, and all the staff in the SHU were aware of the incident and knew that he was in pain. He contends that he was denied prescription pain medication for 12 days, in part, to prevent the creation of any record of the incident and, in part, to retaliate against him.

## II. LAW AND ANALYSIS

### A.  Exhaustion of Administrative Remedies

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), *cert. denied*, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written

3

documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Title 28 of the Code of Federal Regulations sets forth a four-step grievance procedure for administrative remedies for inmates housed in federal prisons. Under this title, an inmate initiates the grievance procedure by requesting an Informal Resolution from the prison official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the informal response, or if there has been no response to the complaint, the inmate may file a BP-9 form with the institution staff member designated to receive such requests. 28 C.F.R. § 542.14. If this second step does not provide satisfactory results, the inmate may file an appeal on a BP-10 form to the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response may submit an appeal on the appropriate BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision on the grievance.

An inmate who reasonably believes the issue he is grieving is sensitive and would place him in danger if his grievance were made known at the institution, may file a

4

grievance directly with the Regional Director on a BP-10 form. If the Regional Director agrees that the Request is sensitive, the Request shall be accepted. If the Regional Director does not agree with the inmate's assessment of the nature of the grievance, the inmate will be informed of the determination and given the opportunity to pursue the grievance through local channels with a BP-9 form. 28 C.F.R. §542.14(d)(1).

**B.      Sanchez-Ramos's Efforts to Exhaust**

Mr. Sanchez-Ramos claims the defendants made it very difficult for him to file his grievances. He indicates that he submitted a "sensitive BP-10" form to the Regional Director regarding the assault. It was returned to him with the remark that the grievance was not considered sensitive. He was instructed to pursue the grievance through the standard procedure beginning with an Informal Complaint Resolution at the institutional level. He states he tried to obtain an Informal Complaint form from his unit manager but his requests were ignored. On 9 September 2004, Sanchez-Ramos indicates he sent an "Inmate Request to Staff form" to Counselor Hulett again asking for an Informal Resolution form. (Compl. at 12). Counselor Hulett responded to the request stating that Sanchez-Ramos must wait until the disciplinary proceedings against him had been concluded. Finally, on 10 September 2004, a counselor from another unit gave Sanchez-Ramos a complaint form. On 24 November 2004, Counselor Hulett gave Sanchez-Ramos a memo from Warden Sniezek, dated 18 October 2004, indicating that his allegations were being investigated and that informal resolution would not be possible until all of the facts were gathered.

5

Mr. Sanchez-Ramos then requested a BP-9 form from his unit manager, case manager, and Counselor Hulett.  They repeatedly denied his request for a BP-9 form asserting that Sanchez-Ramos could not file the BP-9 form while the matter was still under investigation.  Sanchez-Ramos ultimately obtained a BP-9 form in the last week of December 2004, filed his grievance on 6 January 2005, and received a copy of the response on 15 February 2005.[3]  On 15 February 2005, Sanchez-Ramos submitted an appeal of his grievance on a BP-10 form to the Northeast Regional Office, which was returned to him because he did not attach a copy of the BP-9 decision.  He resubmitted his BP-10 form to the Regional Office and received a receipt for its filing, which indicated that a response is due from the Regional Office by 6 April 2005.[4]  Sanchez-Ramos filed his complaint in federal court on 23 March 2005.  There is no suggestion that Mr. Sanchez-Ramos received a response to his grievance from the Regional Office or that he appealed that decision on form BP-11 to the General Counsel prior to filing this action.

**C.   Exhaustion Analysis**

Prisoners are required by 42 U.S.C. §1997e to exhaust their administrative remedies *prior* to filing suit.  They may not exhaust these remedies during the pendency of the action.  See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).  Moreover, they cannot abandon the process before completion and claim that they exhausted their remedies, nor can they assume that a grievance would be futile and proceed directly to

---

[3] Sanchez-Ramos asserts that the response was dated 11 February 2005.

[4] Although he was given ten days to re-file the grievance appeal, Sanchez-Ramos claims his unit team withheld the returned grievance for four of the ten days.

federal court with their complaints. See Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999). Based on the face of the complaint, it is evident that, at the time this action was filed, Mr. Sanchez-Ramos still had administrative remedies available to him which must be exhausted before he can bring his claims in federal court. Specifically, Sanchez-Ramos filed this complaint before receiving any response to his BP-10 form and before appealing that decision on a BP-11 form to the General Counsel.

Furthermore, even if this court were to determine that Sanchez-Ramos complied with the exhaustion requirement for his assault claim, there is no indication that he exhausted his administrative remedies with respect to his claims that the defendants denied him proper medical care for his injuries or that they retaliated against him. These claims must also be grieved against the defendants against whom the allegations are asserted. Garrison, No. 00-1662, 2001 WL 1006271 at *1; Curry, 249 F.3d at 504-05. There is no allegation in the complaint which suggests that these claims have been the subject of grievances and none of the copies of grievances Mr. Sanchez-Ramos submitted to the court on 31 March 2005 (Docket #4) demonstrates that these issues were pursued through administrative remedies.

The United States Sixth Circuit Court of Appeals recently adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e. See Bey v. Johnson, __ F.3d __, 2005 WL 1120283 (6th Cir. April 27, 2005). Under this rule, a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety for failure to exhaust administrative remedies. Bey, 2005 WL 1120283, at *3. The district court no longer has the option of dismissing just the

unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process. Id. A prisoner whose "mixed" complaint was dismissed may either wait until all of his claims have been exhausted to file his action, or file a new action which contains only the exhausted claims. Id. at *6. Because Mr. Sanchez-Ramos has not demonstrated that he filed grievances for his claims concerning the denial of medical care and retaliation, the court is required by the rule of total exhaustion to dismiss the complaint in its entirety without prejudice.

### III. CONCLUSION

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. § 1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. [5]

       IT IS SO ORDERED.

                                 /s/Lesley Wells
                                UNITED STATES DISTRICT JUDGE

Dated: 19 May 2005

---

[5] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith."